IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

*Shelton Beaman*,

               Plaintiff,                        : Civil No.

                                                VERIFIED COMPLAINT

        v.                                   <u>JURY TRIAL DEMAND</u>

COMMISSIONER HUMAN RESOURCES
ADMISTRATION
MOLLY PARKS ("HRA")
(In her official capacity),
ABDUL BAMBA, Supervisor,
TERESA DUARTE, CaseWorker)
(In her personal and official capacities), et al.,

               Defendant(s).
_____

# <u>COMPLAINT</u>

## I. JURISDICTION & VENUE

1.     This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States. The court has jurisdiction under 28 U.S.C. Section 1331 and 1343 (a)(3).  Plaintiff Shelton Beaman ("Mr. Beaman"/"Plaintiff") seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure; State pendant claims for personal injuries; Monetary Damages;

2.     The Southern District of New York is an appropriate venue under 28 U.S.C. section 1391 (b)(2) because it is where the events giving rise to this claim occurred.

## PARTIES

## II. PLAINTIFF

3.      Plaintiff, [*Shelton Beaman*], is and was at all times mentioned herein a HRA

HASA Program Client administered ; a resident of the State of [*New York*] and was a resident in

peace, comfort, and repose at 511 East 164th Street,  #2G-1, Bronx, New York 10456, from June

2023 to June 2024.  He is currently kept out by Defendant(s), among others.

## III. DEFENDANT(S)

4.      Defendant, Human Resources Administration ("HRA"); NYC Department of

Social Services and its Emergency Placement Unit ("DSS")("EPU"0/ is/are responsible for

among other things, the administration of public assistance benefits in New York City, including

the HIV Program known as "HASA" and emergency housing; DSS maintains its principal office

at 150 Greenwich Street, New York, New York 10038.

5.      Defendant Molly Wasow Park is the Acting Commissioner of HRA/DSS.

Defendant-Respondent Park maintains her principal office at 150 Greenwich Street, New York,

NY 10038; Defendant Abdul Bambaa ('BAMBAA"), Supervisor at an HRA Office; Defendant

Teresa Duarte, ("DUARTE"), CaseWorker at HRA Office

6.      Each Defendant is sued individually and in his [*or her*] official capacity. At all

times mentioned in this complaint each Defendant acted under the color of state law.

## PRELIMINARY STATEMENT

7.       On December 9, 2024, Defendant DUARTE, a CaseWorker at the New York City

Human Resources Administration office ("HRA"), unlawfully, maliciously with intent to injure

and harass Plaintiff ("Mr. Beaman" / "Plaintiff") imposed and added an additional impermissible

eligibility requirement for him to be eligible for his benefits. an HRA HASA Client awaiting

SNAP and Cash benefits access and processing.  Defendant BAMBAA, supervisor, knew of the impermissible regulation and condition(s) impossed upon Mr. Beaman, yet did nothing to intervene and protect Mr. Beaman's rights.  Mr. Beaman brings this lawsuit under 42 U.S.C. § 1983 against HRA/DUARTE for its/ her malicious, unlawful and wrongful *abuse of process* and use of a Federal and State Benefit's regulations and or rules and against Bambaa for his deliberate indifference to Mr. Beaman and his rights to these benefits, among other things.

## <u>BACKGROUND</u>

8.    HASA (Pursuant to relevant law and regulation on privacy, and HIPPA, Redact as necessary) is a NYC service program for individuals diagnosed with HIV/AIDS.  Qualified individuals receive access to a broad range of benefits and services at a single intake site.  While some benefits, such as an enhanced rent allowance for people living with HIV or AIDS, are available throughout New York State to eligible beneficiaries, the full service package under HASA includes the nutrition and transportation allowance, intensive case management, housing assistance and assistance in accessing a wide array of public benefits, is available only to New York City residents.  Applicants must be a resident of NYC, as well as meet other eligibility criteria such as, citizenship/immigration criteria and financial criteria, and must submit medical verification of their HIV/AIDS diagnosis with their application.

9.    The Human Resources Administration (HRA) authorizes a HASA case for 12 months.  At the end of this period of time, households must recertify and prove they continue to meet the eligibility requirements of the program.

**ADDITIONAL BENEFITS UNDER HASA**

**HOUSING OPPORTUNITIES FOR PEOPLE WITH AIDS (HOPWA)**

10.     HASA beneficiaries may be eligible for the Housing Opportunities for Persons with AIDS (HOPWA) program, which provides housing assistance and supportive services for low-income individuals with HIV/AIDS, and their families . See below, Additional Benefits Under HASA, Housing Opportunities for People with AIDS (HOPWA).

11.     Plaintiff Shelton Beaman ("Mr. Beaman"/"Plaintiff") contends that this District Court should find that Defendants have violated his Fourteenth Amendment procedural due process rights by denying his eligibility to certain benefits (SNAP and Safety Net ("Cash Assistance"/ "Public Assistance"/ "PA"/"CA") in effect, thereby terminating him from the HASA program without a hearing and while in consistent and regular contact with Mr. Beaman. Plaintiff seeks injunctive relief and damages.

12.     Plaintiff  brings this action, on behalf of himself and similarly situated individuals who were or are being denied initial and continued SNAP ("Food Stamps" and PA in the HASA program after a successful determination as being eligible for the program and its services and benefits.  Mr. Beaman will seek additional Intervenors as Plaintiffs.  Mr. Beaman seeks damages ("Compensatory") as well State Pendant Claims, including but  *not* limiting to NIED and Emotional Distress to his claims.  Defendants in the case are HRA, Abdul Bambaa, Supervisor #1, and Teresa Duarte CaseWorker  of HRA.

13.     Proceeding under 42 U.S.C. Section 1983, Mr. Beaman alleges that Defendant(s) had deprived him of rights secured by federal statutes and the United States Constitution. (5th and 14th Amendments, respectively).   Defendants have deprived him of due process (procedural) by denying his continuing eligibility after, among other things, a successfully

submitted recertification application and by terminating him (in effect) from all of the programs he has been eligible for since 2019, under the existing HASA program without a hearing; he was being terminated from the program and/or denied initial and on-going eligibility since he allegedly needs an address, a field visit and or emergency housing to be eligible for, at a minimum  *all* on-going benefits under the HASA program, SNAP and Cash Assistance Programs, respectively.  According to Defendant HRA.

14.    Mr. Beaman contends that this Court should hold Defendant accoutable on his due process issue and that Defendants should be enjoined from denying or terminating his benefits and participation in the HASA program because of lack of an address or emergency housing without providing for notice and hearing.  On this ground alone Plaintiff's requested relief should be awarded including damages.

15.    Defendant(s)will *not* be able to dispute these facts underlying Mr.Beaman's suit, particularly if trial is pursued.  The trial court, however, will resolve any alleged conflict in the evidence.

16.    Mr. Beaman further contends, this Court should grant an Order in his favor as per the facts as it finds them.  Findings of fact by a trial court can be set aside by a reviewing court only if they are clearly erroneous. *Sawyer v. Arum,* 690 F.2d 590, 591 (6th Cir.1982).  As such, Plaintiff contends after a scrutiny of the trial record, the trial court's findings will clearly *not be* erroneous.  Therefore, on this ground Plaintiff should be entitled to the requested relief.

17.    Defendant HRA is also refusing to recertify Mr. Beaman who is a current and present client under the HASA program when Defendant, via email in December 2024, began imposing an impermissible and outstanding eligibilty claim against him for for an address and/or a "Field Visit" in order to be eligible for on-going benefits as a requirement.

18.    Mr. Beaman who had also submitted a Recertification form to the Supervisor and CaseWorker (See ,)  in order to renew his benefits with a State-Prescribed Form in October 2024.

19.    Defendants refused to grant recertification, thereby effectively terminating his participation in the HASA program.  Mr. Beaman's Recertification and subsequent applications were denied without a hearing.  In addition, Mr. Beaman was threatened with termination if he refused to get an address make it possible for a Field Visit to regain access to his benefits.

20.    Plaintiff had no opportunity to dispute the adverse decision and change of his benefits.  There is ample evidence to support Mr. Beaman's claims that Defendants paid no attention to his protests on the phone or via e-mails and made no arrangements to hear the disputes, particularly in any hearing.  This ground alone, Plaintiff should be granted the relief sought.

21.    The HRA Defendants were and are attempting to establish a new unlawful policy of refusing to grant on-going eligibility to him as a HASA Client in the HASA program, and as a person against whom there was an alleged outstanding claim for an address and/or a place for "Field Visit" to continue to be eligible for these living and life-sustaining benefits he so urgently needs, and has been in receipt of since cira 2019.

22.    These impermissible and unlawful HASA program demands by Defendant HRA, contends Mr. Beaman, stems from a systemic failure to train and lack of proper knowledge of HASA program implementation.                                23.

Defendants have been attempting to maintain this absurd policy even when Plaintiff has been diligently disputing these made up requirements, for what he claims, "Feels like years", as a result of the week after week incompetent processes, based on similar issues since 2019).

24.    The on-going

frustration has been, more often than not, extremely overwhelming for Plaintiff.  The countless emails ignored by Defendant sent by Plaintiff to Defendant(s), which have continuously and repeatedly fallen upon blind eyes and/or with a typical lack of any administrative reply by Defendant at all.

25.     This same behavior extends all the way up to the Comissioner's office.  Defendans are simply refusing to certify Mr. Beaman for participation in, among other programs, the HASA program until and unless he complies first, with their unlawful additional eligibility requirement(s).

26.     This ground alone, Mr. Beaman asserts an Order from this Court issuing a preliminary injunction for Defendant to stop this unlawful practice should be granted.      27.

Mr. Beaman further contends that Defendants here should concede that sufficient governmental action exists to invoke the constitutional protection of due process and that participation in a benefit program is a property interest protected by due process.  <u>See</u> e.g., the rulings of other courts that have considered the issue.  *See <u>Holbrook v. Pitt,</u>* 643 F.2d 1261, 1278 (7th Cir.1981); <u>*Caulder v. Durham Housing Authority,*</u> 433 F.2d 998 (4th Cir.1970), *cert. denied,* 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971); <u>*Escalera v. New York City Housing Authority,*</u> 425 F.2d 853 (2d Cir.1970), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); <u>*Baker v. Cincinnati Metropolitan Housing Authority,*</u> 490 F.Supp. 520, 532 (S.D.Ohio 1980), *aff'd,* 675 F.2d 836 (6th Cir.1982); <u>*Ferguson v. Metropolitan Development and Housing Agency,*</u> 485 F.Supp. 517, 521 (M.D.Tenn.1980); <u>*Owens v. Housing Authority of the City of Stamford,*</u> 394 F.Supp. 1267 (D.Conn.1975). *See also <u>Vandermark v. Housing Authority of the City of New York,</u>* 663 F.2d 436 (3d Cir.1981); <u>*Ressler v. Landrieu,*</u> 502 F.Supp. 324 (D.Alas.1980); *Brezina v. Dowdall,* 472 F.Supp. 82 (N.D.Ill.1979).  Thus, the main issue whether

there was any hearing for Plaintiff in this situation. It is Plaintiff's contention that, there was *not* any informal nor formal hearings whatsoever.

28.    Mr. Beaman contends that at the time of the complained of acts on which liability is based, it was established beyond question that at least some type of hearing was necessary before one could be deprived of public assistance that had been awarded because of need. *Goldberg v. Kelly,* 397 U.S. 254, 261-64, 90 S.Ct. 1011, 1016-19, 25 L.Ed.2d 287 (1970).

There are also several federal cases that have applied the due process right to deprivations of public housing assistance (Since HASA program has a rental assistance component, which has also been deprived as a result of the complained upon acts and behavior by Defendant HRA/NYC DSS). *See, e.g. Caulder v. Durham Housing Authority,* 433 F.2d 998 (4th Cir.1970), *cert. denied,* 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d 539 (1971); *Escalera v. New York City Housing Authority,* 425 F.2d 853 (2d Cir.1970), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *Brown v. Housing Authority of the City of Milwaukee,* 340 F.Supp. 114 (E.D.Wis.1972). Some cases had also held that potential participants in public housing programs were entitled to an informal hearing if their application was rejected. *Neddo v. Housing Authority of the City of Milwaukee,* 335 F.Supp. 1397 (E.D.Wis.1971); *Davis v. Toledo Metropolitan Housing Authority,* 311 F.Supp. 795 (N.D.Ohio 1970). Plaintiff contends the same could or should apply for the *potential* HASA program Client; The law is clear at the time of Duarte's and Bamba's conduct that some type of hearing was due before he could be eliminated from a benefit such as SNAP or Public Assistance program.

29.    It is also evident that Defendants should have known of those clearly established constitutional rights. "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct."

*Harlow v. Fitzgerald,* 102 S.Ct. at 2739. Thus, Gandert is not entitled to qualified immunity.

Not only that...

30.     BAMBAA had been given notice via email in November 2024, that Mr. Beaman intended to seek redress since it is clearly established under law that the wrongful termination of food stamp benefits is a violation of 42 USC §1983 and it is settled case law that Mr. Beaman has standing resulting from this violation and no duty to give additional notice or exhaust any administrative remedies.

31.     Despite this notice, BAMBAA continued this misconduct in violation of Mr. Beaman's rights to Due Process and Equal Protection Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States to deprive the plaintiff of property and due course of justice in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1985 (3) and 42 U.S.C. sec. 1983.  See,

32.     BAMBAA and DUARTE committed violations including but not limited to, the unlawful termination of food stamp benefits (and cash assistance) in a temporal relationship to Mr. Beaman's earlier notice (emails and at least one phone call) that BAMBAA and the HRA Defendants were violating the plaintiff's property rights in recieving benefits and for inquiring about his benefits.

### A. TERMINATION OF SNAP BENEFITS UNDER 42 U.S.C. § 1983 (DEFENDANTS BAMBAA and DUARTE)

33.    In November, 2024 Plaintiff applied for the  Supplementary Nutritional Assistance Program provided for under federal statutory Supplemental Nutrition Assistance Program ("SNAP") online at the AccessHRA website.  www.access.nyc.gov.

34.    On the following day, Plaintiff was given an interview based on his application and lack of income or savings and was informed by "Mr. Lin"..."Unfortunately I'm not going to be able to open your account"  Mr. Lin provided Mr. Beaman with two phone numbers to call and said "I don't know why" after Mr. Beaman inquired as to why he could not open the case.

- **The Conduct Complained of  Was Committed by**
**Supervisor BAMBAA and Caseworker DUARTE acting under color of state law**

35.    On December 9, 2024**,** Supervisor BAMBAA and DUARTE with knowledge Mr. Beaman has no income and required emergency food assistance canceled the plaintiff's federal food stamp benefits under SNAP and refused to release the benefit(s) to him.

35.    BAMBAA and caseworker DUARTE were acting under color of state law as state officials (local government agency) when they terminated and or stopped Mr.Beaman's food stamp benefits under SNAP.  e.g., ("USDA")("Food Stamps")("EBT")

36.    DUARTE  via email, on December 9, 2024, 4:07 PM, presented an impermissible, unauthorized, non-existent, made-up-rule to Mr. Beaman.  To wit:

"A successful field visit will be *cause* to get benefits to restart".

This was after DUARTE was in receipt of Mr Beaman's email inquiring as to why he had not had access to on-going Food Stamps and/or his Cash Benefits under the USDA federal food stamp benefits program, SNAP, and HASA.  See **EXHIBIT** A; The Emergency Housing Demand.

37.    Plaintiff received no calls and no letters nor notification(s) from HRA, BAMBAA nor DUARTE the CaseWorker despite Mr. Beaman having been in regular contact with HRA via email on a regular and continuous basis, since the November 7, 2024 application, and well prior

to that date; using a phone number which was also provided to HRA and both BAMBAA and

DUARTE on the application.  HRA had ample ways to *contact* Mr. Beaman (and to remain in

contact) before, during and after this unauthorized process and processing by Defendant(s).

38.    The December 9, 2024 reason given by HRA caseWorker TERESA DUARTE

**acting under color of state law** was a pretext and materially fraudulent and unauthorized claim.

39.    HRA CaseWorker TERESA DUARTE sent no prior notice of the termination and

stopping of his benefits.  Defendants did not inform Mr. Beaman of his right to appeal or a

hearing.

### (2) the Conduct Deprived Mr. Beaman of Rights, Privileges,<br/>or Iimmunities Secured by the Constitution or Laws of the United States

40.    Plaintiff has suffered and continues to suffer a loss of among other things,

supplemental nutrition under the federally provided SNAP program now and also during October

and December 2024, during these two months he was unable to maintain his diet as a diabetic

homeless Veteran and health as a HASA Client.  His ongoing health issues have been

exasperating.

41.    Plaintiff  has been without crtical benefits since the start of the Winter months and

will be without for the remainder of the year beyond and since the already past holiday time

without food nor funding causing serious stressors and distress, without his regularly issued on-

going benefits.  To date: January 8, 2025, still without.

42.    Defendants HRA, ABDUL BAMBAA and TERESA DUARTE CaseWorker

should be served process.

### MEMORANDUM OF LAW

43.    The plaintiff is requesting prohibitory rather than mandatory injunctive relief during the

course of this litigation. Plaintiff sent an email to Defendant BAMBAA giving notice that

Plaintiff will pursue a lawsuit against him for his benefits as HRA had now violated his constitutionally protected rights; BAMBAA acting in concert with DUARTE cancelled and stopped, among other things Mr. Beaman's food stamps after this email, a benefit that Mr. Beaman's monthly survival, health, wellness and maintenance of his program status quo during the pendency of the litigation is based on.

### Standards For Relief

Plaintiff supports his right to *Damages* under the factors required.

- **STANDING**

44.    Defendant(s) will *not* be able to argue that Plaintiff lacks standing to raise his claims. Plaintiff will show "a fairly traceable causal connection between the claimed injury and the challenged conduct" and a "`substantial likelihood' that the relief requested will redress the injury claimed." *Duke Power v. Carolina Environmental Study Group,* 438 U.S. 59, 72, 75 n. 20, 98 S.Ct. 2620, 2630, 2631 n. 20, 57 L.Ed.2d 595 (1978).  Defendants will *not* be able to contend that Plaintiff's current benefits and continuing homelessness is not caused by them and is unlikely to be redressed even if the requested relief is granted.

45.    Plaintiff intends to file and submit declaration(s) which will convincingly demonstrate a causal connection between HRA's failure and its stopping the issuance of benefits to finding appropriate permanent housing and the Defendants' failure to implement the Food Act. Moreover, this injury would be redressed by an order requiring Defendants to comply with the Act. *See Arlington Heights v. Metropolitan Hous. Dev. Corp.,* 429 U.S. 252, 261, 97 S.Ct. 555, 561, 50 L.Ed.2d 450 (1977); *Lee v. Pierce,* 698 F.Supp. 332 (D.D.C.1988); *Bruce v. Department of Defense,* Civ. No. 87-0425 (D.D.C. June 17, 1987) [available on WESTLAW, 1987 WL 13140]

- **ARGUMENT**

46.     Plaintiff contends that Defendants' actions are reviewable under the

Administrative Procedures Act. *See* 5 U.S.C. § 706. Where, as here, an agency has a statutory

obligation to act, section 706(1) instructs the reviewing court to "compel agency action

unlawfully withheld or unreasonably delayed." *See Public Citizen Health Research Group v.*

*FDA,* 740 F.2d 21, 32 (D.C.Cir.1984); *Equal Employment Opportunity Comm. v. Liberty Loan*

*Corp.,* 584 F.2d 853 (8th Cir.1978).

47.     Plaintiff, avers there is no rationale for the Defendants' HRA actions in this case is

whatsoever.

48.     Plaintiff contends their behavior is attributable to their intent to violate or conspire

against him due to his knowlegeable program ways and very pro-active, high-program

functionality and abilities of interpretation to their Programs under this Act and other program

regulations.  It is settled that "[t]he judiciary is the final authority on issues of statutory

construction and must reject administrative constructions which are contrary to clear

congressional intent." *Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843

n. 9, 104 S.Ct. 2778, 2781-2782 n. 9, 81 L.Ed.2d 694 (1984).  If Congress has not spoken to the

question at issue, however, the proper standard of review is whether the agency's interpretation

"is based on a permissible construction of the statute." *Id.* at 843, 104 S.Ct. at 2781- 2782;

*International Union, UAW v. Brock,* 783 F.2d 237, 245 (D.C.Cir.1986). This Court should review

Defendant's actions with these principles in mind.

49.     A preliminary injunction is properly issued upon a showing by the plaintiffs: (1)

of a strong likelihood of success on the merits; (2) that without an injunction they will be

irreparably harmed; (3) that the injunction will not substantially harm other interested parties;

and (4) that the public interest favors an injunction. *WMATC v. Holiday Tours,* 559 F.2d 841, 842-43 (D.C. Cir.1977); *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, (D.C.Cir. 1959) (per curiam).

### A. Likelihood of Success On the Merits

50.    Plaintiff argues that the defendant agency has not released his (on-going) benefits of Food Stamps ("SNAP") and Cash Assistance ("Saftety Net Assistance" / "SNA") or ("CA") to him after eligibility had been clearly esatblished in the most recent application(s) (among others since 2019) for benefits on Novemeber 7, 2024.  This Court should consider the merits of this argument.

51.    Plaintiff further contends that HRA's method of implementing and administering its Program, is not consonant with the statute. This failure to follow the letter of the statute has contributed to the misapplication of the statute complained of by Mr. Beaman. See, Food Stamp Act.  This Court should find that Defendants are not proerly implementing the Act nor the eligibilty requirements for the HASA Program, SNAP nor Safety Net Assistance.

52.    To obtain a preliminary injunction under federal law, plaintiffs must show: (1) he will suffer irreparable harm unless the injunction issues; (2) there is a substantial likelihood that plaintiffs ultimately will prevail on the merits; (3) the threatened injury to plaintiffs outweighs any harm the proposed injunction may cause the opposing party; and (4) the injunction would not be contrary to the public interest. *Wyandotte Nation v. Sebelius*, 443 F.3d 1247, 1254-55 (10th Cir. 2006).

#### A.    *Irreparable Harm/ Irreparable future injury*

53.    Mr. Beaman alleges that he has been irreparably harmed and will continue to be harmed if a preliminary injunction is not issued.  He asserts that Defendants' actions denying him

access to benefits that he sorely needs.  This nutrtitional-based life stabilizing food benefit can and does provide a continuous source of necessary dietary requirements for Plaintiff as a HASA Client, and other basic human necessities. Plaintiff will be irreparably harmed in the absence of an injunction, he claims his wellness will deteriorate and could be forever lost to him.  Mr. Beaman asserts that the serious nature of his physical and mental injuries is and will be further frustrated and exacerbated by the approaching winter.

54.    Defendants will not be able to argue that an injunction will not immediately relieve Plaintiff's injuries due to the lack of an opportunity to participate in the SNAP program as he has done since 2019 (and before).  On this ground alone, Plaintiff contends that  he has shown that he will be irreparably injured unless an injunction is issued.

55.    The injury to the plaintiff here is in violation of the constitutional rights to due process and freedom of speech and to petition the government, rights which were vindicated  and the current conduct is in violation of clearly established controlling case law.  See *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.3d 466, 472 (9th Cir. 1984) (noting a presumption of harm where a plaintiff has shown a violation of a constitutional right).

56.    Any person's "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The Tenth Circuit has noted that "[t]o the extent that First Amendment rights are infringed, irreparable injury is presumed." *Cmty. Commc'ns Co. v. City of Boulder*, 660 F.2d 1370, 1376 (10th Cir. 1981) (citing *Elrod*, 427 U.S. at 373) (internal quotation marks omitted).

       B.    *Substantial Likelihood of Prevailing on the Merits/ Lack of Adequate Remedy*

57.    The plaintiff was not required to provide a Kansas Tort Claims Act pre lawsuit

notice.  In *Felder v. Casey,* 487 U.S. 131 (1988) (a plaintiff who files a § 1983 action in state court is not required to comply with state pre-litigation "notice of claim" requirements.)

58.     The plaintiff was also not required to exhaust any remedies before filing his lawsuit. In *Williamson County Regional Planning Commission v. Hamilton Bank* addressed the interplay between the "finality" principle and the Section 1983 non-exhaustion rule./*Williamson County Reg'l Planning Comm'n v. Hamilton Bank* , 473 U.S. 172, 192-93 (1985). In that case, the court dismissed a challenge to a zoning rule on the ground that the lawsuit was not ripe because the plaintiff bank, when faced with a rule that could have stripped its property of economic value, sued the zoning agency instead of asking for a variance. Had the variance been granted, the property loss would have been avoided or curtailed. If the variance had been denied, resulting in a deprivation of economic value in violation of the Fourteenth Amendment, the case would then have become ripe for review. In response to the argument that Section 1983 does not require exhaustion, the Court wrote:

> "The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate. *Patsy [v. Board of Regents]* concerned the latter, not the former."

*Id.* at 192.

If a food stamp agency issues a notice of action which affects an individual and, on its face, violates federal law, an aggrieved plaintiff may sue without first invoking any available administrative agency appeals. The agency's action has "inflict[ed] an actual concrete injury." While an administrative proceeding could remedy the injury, so could a lawsuit. Because Section 1983 does not require exhaustion, a plaintiff can go directly to court. See "I.A.4.b. Exhaustion of Administrative Remedies and the Ripeness Doctrine" <u>Federal Practice Manual For Legal Aid</u>

<u>Attorneys</u>. Jeffrey S. Gutman; Shriver National Center on Poverty Law, (Feb. 2010).

59.    Plaintiffs suing under for denial of food stamp benefits have been specifically found to be exempt from requirements to exhaust state or federal administrative remedies including those available through the USDA:

> "The remedies found insufficient to bar a Sec. 1983 action in *Wright* are strikingly similar to the enforcement procedures afforded food stamp recipients under the Food Stamp Act. Like the Housing Act, the statute at issue does not authorize a private judicial remedy to test the decisions and policies of the state agencies administering the food stamp program. Rather, the Act mandates that the states establish administrative fair hearing procedures to redress complaints of aggrieved individuals. 7 U.S.C. Sec. 2020(e)(10). As the Supreme Court stated in Wright, "the existence of a state administrative remedy does not ordinarily foreclose resort to Sec. 1983." Id. at ----, 107 S.Ct. at 773, 93 L.Ed.2d at 791. In addition, the Food Stamp Act grants the Secretary of Agriculture the power to enforce state compliance with the federal statute by administrative claims, withholding funds, or seeking injunctive relief against a recalcitrant state, Title 7 U.S.C. Sec. 2020(g), generalized avenues of enforcement open to a federal agency are insufficient evidence of a congressional intent to prohibit a private judicial action under Sec. 1983. *Id.*"

*Gonzalez v. Pingree* 821 F.2d 1526 at para 10 (1987).

60.    The complaint's allegations of Supervisor ABDUL BAMBAA acting in concert with the HRA CaseWorker TERESA DUARTE to deprive Plaintiff Mr.Beaman of his right to food stamps (among other benefits) under a fraudulent regulation and/or SNAP Program rule that Plaintiff *must* be housed at a "Transitional" residence and the CaseWorker *must* conduct and perform a "Field Visit", is absolutely *absurb*.  Mr. Beaman had in short, notified BAMBAA of his liability to him under 42 U.S.C. 1983 ("Serious legal trouble").   This incontrovertibly establishes the deprivation of food stamps is a violation of federal law regarding the SNAP program criteria.   On this ground alone, the preliminary injunction and damages should be granted/awarded.


- **BAMBAA and DUARTE's Liability under 42 U.S.C. Sec. 1983**


61.    Plaintiff's Complaint that his food stamps were taken and stopped under a false and fraudulent additional eligibility requirement is itself a well settled violation of 42 U.S.C.

1983 for depriving Mr. Beaman a benefit under the laws of the United States:

"Title 42 U.S.C. 1983 - which provides that anyone who, under color of state statute, regulation, or custom deprives another of any rights, privileges, or immunities "secured by the Constitution and laws" shall be liable to the injured party - encompasses claims based on purely statutory violations of federal law, such as respondents' state-court claim that petitioners had deprived them of welfare benefits to which they were entitled under the federal Social Security Act. Given that Congress attached no modifiers to the phrase "and laws," the plain language of the statute embraces respondents' claim, and even were the language ambiguous this Court's earlier decisions, including cases involving Social Security Act claims, explicitly or implicitly suggest that the 1983 remedy broadly encompasses violations of federal statutory as well as constitutional law. Cf., e. g., *Rosado v. Wyman*, 397 U.S. 397 ; *Edelman v. Jordan*, 415 U.S. 651 ; *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 . Pp. 4-8."

*Maine v. Thiboutot*, 448 U.S. 1 at fn 1 (1980).

   The unlawful deprivation of the welfare benefit(s) of food stamps have been specifically found to state a

violation of 42 U.S.C. 1983 against state officials in the capacity of Comissioner:

"We consider this case *en banc* to review the panel's holding that no private right of action is available under 42 U.S.C. Sec. 1983 to remedy state violations of the Food Stamp Act, 7 U.S.C. Secs. 2011-2029. See *Victorian v. Miller,* 796 F.2d 94 (5th Cir.1986). In reaching its conclusion, the panel acted under the constraint of our decision in *Tyler v. Mmes. Pasqua & Toloso,* 748 F.2d 283 (5th Cir.1984), a decision it could not overrule. Having now reconsidered the issue en banc, we expressly overrule Tyler and hold that food stamp claimants may bring an action under section 1983 against state officials for violations of the Food Stamp Act."

   *Josephine Victorian v. Barbara Miller, Supervisor  Texas Department of Human Services* 13 F.2d 718 at pg. 78

(1987).

   Further,  At the time of the acts on which liability is based, it was established beyond

question that at least some type of hearing was necessary before one could be deprived of

public assistance that had been awarded because of need. *Goldberg v. Kelly,* 397 U.S. 254, 261-

64, 90 S.Ct. 1011, 1016-19, 25 L.Ed.2d 287 (1970). Several federal cases had applied the due

process right to deprivations of public housing assistance. *See, e.g. Caulder v. Durham Housing

Authority,* 433 F.2d 998 (4th Cir.1970), *cert. denied,* 401 U.S. 1003, 91 S.Ct. 1228, 28 L.Ed.2d

539 (1971); *Escalera v. New York City Housing Authority,* 425 F.2d 853 (2d Cir.1970), *cert.

denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970); *Brown v. Housing Authority of the

City of Milwaukee,* 340 F.Supp. 114 (E.D.Wis.1972). Some cases had also held that potential

participants in public housing programs were entitled to an informal hearing if their application

was rejected. Cf., *Neddo v. Housing Authority of the City of Milwaukee,* 335 F.Supp. 139 (E.D.Wis.1971); *Davis v. Toledo Metropolitan Housing Authority,* 311 F.Supp. 795 (N.D.Ohio 1970).

- **ABDUL BAMBAA and TERESA DUARTE are persons who, under color of any statute, ordinance, regulation, custom, or usage, of any State…**

62.    Defendants committed conduct under the color of state law in using their office to deprive Mr. Beaman of his food stamp benefits under the federal SNAP program. Conduct that is state action under the Fourteenth Amendment is always action under color of state law for purposes of Section 1983.*Lugar,* 457 U.S. at 930-32, 935 *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940 (1982).  Both an official who misuses (or abuse of) power in violation of federal law, and an official who enforces a state law which violates federal law, act under color of state law. *Lugar*, 457 U.S. 940.

- **ABDUL BAMBAA and TERESA DUARTE subject, or causes to be subjected, Mr. Beaman's deprivation of rights, privileges, and immunities secured by the Constitution and laws**

63.    Mr. Beaman's attached evidence including the December 9, 2024 E-mail from TERESA DUARTE by the HRA CaseWorker, is ( not a permissible reason for local government/stat to stop SNAP food stamp benefits and CA to a person homeless and receiving mail now at a program prescribed P.O.Box, was fraudulently used as a reason to stop the plaintiff's federal benefits, and the temporal relationship of the cancelation of benefits to Plaintiff's Application for benefits on November 7, 2024, violating Plaintiff's application rights as a result.

64.    Plaintiff has established pretext and has showed that Defendants: (1) had no basis in fact; (2) did in fact, made an unwarranted determination in total disregard of his rights or (3)

was insufficient to warrant the decision not to provide benefits to Mr. Beaman.  See e.g.,

*Zambetti v. Cuyahoga Community College*, 314 F.3d 249, 258 (6th Cir. 2002)(citing *Manzer v.*

*Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)).

65.    This Court should find that state officials including Defendants CaseWorker

TERESA DUARTE were not free to add additional eligibility requirements like having a

working cell phone or being at the household for one surprised visit or assessment, of which

appears to have even been the basis TERESA DUARTE used:

> "The Food Stamp Act also expressly prohibits a state agency participating in the Food Stamp
> Program from levying additional eligibility requirements for applicant households. 7 U.S.C. § 2020(e)
> (5).Additionally, the Food Stamp Act expressly requires the state agency to undertake certification of
> applicant households in accordance with the procedures prescribed in the federal regulations. 7 U.S.C. §
> 2020(e)(6)."

*Roberts, v. Austin* 632 F.2d 1202 at ¶48 and fn 13, 14 (5th Cir. 1980).

It has also been clearly established that DUARTE was not permitted to use an alternate

contact or means of verification without prior arrangement with Mr. Beaman:

> "Verification is the process of confirming the household statement about factors of eligibility through either
> documentary sources, collateral (third-party) contacts, or a home visit. The areas of verification and the means of
> verification are not left to the discretion of the certification worker. Pursuant to 7 C.F.R. § 273.2(f), in the absence of
> consent from the household, a certification worker is not free to verify any factor of eligibility or to make contacts
> with third persons in order to verify information provided by the household.
> The federal regulations governing verification expressly distinguish between factors of eligibility for which
> verification is mandatory (gross non-exempt income, alien status, utility and medical expenses), and all other factors
> of eligibility. For non-mandatory factors, the state agency, here HRS, can only require verification if the household's
> assertions are "questionable." 7 C.F.R. § 273.2(f)(1) and (2).7 Thus, if the caseworker has no reason to believe that
> the household's assertions are questionable regarding a non-mandatory factor, household composition for example,
> the caseworker cannot require verification of this factor. 7 C.F.R. § 273.2(f)(2) and (i).
> Where verification is allowed or required, the nature of verification is not left to caseworker discretion. The
> primary source of verification is documentary evidence provided by the household. 7 C.F.R. § 273.2(f)(4). If the
> household is unable to provide acceptable documentary verification, the caseworker may make use of a collateral
> contact. The caseworker, however, is first required to ask the household to name and agree to a mutually acceptable
> collateral contact. 7 C.F.R. § 273.2(f)(5)."

*Roberts, v. Austin* 632 F.2d 1202 at ¶¶28-30 and fn 6,7,8,9,10(5th Cir. 1980).

It is also evident that Defendants should have known of those clearly established

constitutional rights. "If the law was clearly established, the immunity defense ordinarily should

fail, since a reasonably competent public official should know the law governing his conduct."

*Harlow v. Fitzgerald,* 102 S.Ct. at 2739.

- **First Amendment**.

66.    Plaintiff has a substantial likelihood of success of proving that the retaliatory

cancelation of food stamp benefits violates the First and Fifth Amendments protected

from state intrusion through the Fourteenth Amendment and actionable under 42 U.S.C.

1983 as Plaintiff has charged Defendants ABDUL BAMBAA and CaseWorker TERESA

DUARTE with.

67.    Defendants ABDUL BAMBAA and CaseWorker  TERESA DUARTE violated

Mr. Beaman's clearly established right to be free from retaliation for defending the limited and *in

rem* nature of the his benefits . The Right to Petition in Courts is a First Amendment Right.  In

stressing the importance  of the  Petition Clause,  the Supreme Court of the United States

recognized its central role to all civilization,  saying in  *Chambers v.  Baltimore & Ohio R.R.*, 207

U.S. 142, 148 (1907):

> "The Right to sue and defend in the courts is the alternative of force.  In  an  organized  society,  it
> is  the  right conservative  of  all other rights and lies at the foundation of orderly government.  [emphasis
> added] As an  "exceptional circumstance,"  the Right to petition in courts is  a fundamental Right
> guaranteed by the First Amendment. See *California Transport v. Trucking Unlimited*, 404 U.S. 508, 510
> (1972)."

68.    Dfendants ABDUL BAMBAA and CaseWorker  TERESA DUARTE violated Mr.

Beaman's clearly established right to be free from retaliation for writing a an email to BAMBAA

and or the Comissioner of HRA.

- **42 U.S.C. 1981**.

69.    Plaintiff has as a substantial likelihood of success of proving that the retaliatory

cancelation of food stamp benefits violates the protections and immunities for advocacy against

discrimination on the basis of his threats to Defendant(s) of redressing the Courts against them in

a continuation of deprivations of the Paintiff's liberties and right to a livelihood for representing

the African American racial discrimination victim James L. Bolden and the interests of the

American Indian Child Baby C by appealing the denial of Indian Child Welfare Act protections

through a continuing conspiracy joined by BAMBAA and CaseWorker TERESA DUARTE in

violation of 42 U.S.C. 1981 and is actionable under 42 U.S.C. 1983 as Mr. Beaman has charged

Defendants ABDUL BAMBAA and CaseWorker TERESA DUARTE with.

70.    The violation of USDA rules for state agencies administering SNAP benefits and

the fraud of the reason used to cancel the federal benefits of the plaintiff make the defendants

BAMBAA and DUARTE  co-conspirators to the ongoing civil rights conspiracy. "[B]ecause the

nature of conspiracy entails secrecy, the agreement and members' participation in it must often be

established by way of inference from the surrounding circumstances." *United States v. Cabrera*,

116 F.3d 1243, 1245 (8th Cir. 1997) (internal quotation omitted). In addition, "[o]nce a

conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be

sufficient to prove the defendant's involvement." *Id*.

71.    Defendants furthering a chain of retaliations to deprive Mr. Beaman of a way to

build his health, maintain his weight, and overall wellness and fitness.  Not only that, at the same

time attempting to force Plaintiff into an unauthorize SNAP and SNA ("CA"), process for

allegedly not being able to conduct a "Field Visit", depriving the plaintiff of his federal food

stamp benefits under the SNAP program are furthering interfering in the Mr. Beaman's health

and wellness as it pertains to his *life*.

- **EQUAL PROTECTION OF THE LAW**

72.    Mr. Beaman has a substantial likelihood of success of proving that the retaliatory

cancelation of food stamp benefits violates the Equal Protection Clause of the Fourteenth

Amendment.  It provides that "[n]o State shall deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1. and is actionable under 42 U.S.C. 1983 as Paintiff has charged the DEFENDANTS with.

73.    Plaintiff need not prove his whole case to show a likelihood of success on the merits.  If the balance of hardships tips in favor of plaintiffs, then the plaintiff must only raise "'questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberative investigation.'" *ACLU v. Reno I*, 1996 WL 65464, *2 (E.D. Pa.) (quoting *Hamilton Watch Co. v. Benrus Watch Co*., 206 F.2d 738, 740 (2d Cir. 1953)).

*C.    Whether the Threatened Injury Outweighs Any Harm*

74.    Plaintiff asserts that the public interest would be harmed by depriving him on the resources to vindicate his rights including nutrition he is eleigible for under the USDA SNAP program.

75.    Defendants will suffer no financial harm from an imposition of preliminary injunctive relief preserving the status quo.

*D. Whether an Injunction Would Be Contrary to the Public Interest*

76.    Depriving Plaintiff of food stamp benefits under the SNAP act should be enjoined during the pendency of the present litigation because the defendants BAMBAA and DUARTE have violated the USDA SNAP program's prohibition against unlawful discrimination in food stamp benefits and have violated the program's regulatory requirements in cutting the benefits to Mr. Beaman while he is eligible and entitled to them. See *Golden Gate Rest. Ass'n*, 512 F.3d at 116 (noting the analysis of where the public interest lies is a separate and additional consideration from that of irreparable

injury).

77.     Supervisor ABDUL BAMBAA and CaseWorker TERESA DUARTE's employment of criminal fraud under Title 18 U.S.C. § 2 in committing an offense against the United States, and also in violating Title 18 U.S.C. § 242. Deprivation of rights under color of law, and Title 18 U.S.C. § 241. Conspiracy against rights of citizens is antithetical to the public interest.

78.     Violations of public policy and violations of statutes are inextricably linked because statutes are one way in which states set forth their public policy.  "Public policy, where the legislature has spoken, is what it has declared that policy to be.  So far as the question of policy is concerned, [the] statute settles the matter." *Thompson v. Allstate Ins. Co*., 412 N.W.2d 386, 388-89 (Minn. Ct. App. 1987).

79.     Public policy, however, dictates that Defendant should not be permitted to benefit from its own misconduct.  See, e.g., *Ganley Bros. v. Butler Bros. Bldg.* Co., 212 N.W. 602, 603 (Minn. 1927) (refusing to enforce, based on public policy, a party's attempt to escape his own fraud).

## PRAYER FOR REFIEF

**WHEREFORE** Plaintiff Shelton Beaman, Respectfully seeks immediate restoration of food stamp all Safety Net Assistance, but not limited to all Restaurant Allowance withheld since October 2023, and all benefits terminated by the HRA Defendants ABDUL BAMBAA and TERESA DUARTE.  Also, During the pendency of this litigation solely for the reason and purpose of updates and clarification of benefit dates, times, and schedule DEFENDANTS are to transfer his case to HAMILTON CENTER in Harlem and are required to notify Plaintiff when

the transfer has finalized by email in the event his eligibility status is questioned or to be

investigated or changed by the defendants, during the duration of this action.

/s/Shelton Beaman
by:
*and appearing Pro Se*
wakeastoria@yahoo.com
Plaintiff *for* Plaintiff
("Mr. Beaman")
Shelton Beaman
*Pro se attorney*

Evidentiary exhibits will be presented at hearing

Affidavit/Affirmation of Plaintiff

### CERTIFICATE OF COURTESY SERVICE

I hereby certify I have provided on January 8, 2025, a true copy of the above to the Defendant(s) via, email and/to the Pro Se Office In the Southern District of New York

/s/Shelton Beaman
*Shelton Beaman*
Plaintiff appearing *Pro se*
wakeastoria@yahoo.com