USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/19/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHELTON BEAMAN,

                Plaintiff,

                -against-

MOLLY PARKS, as Commissioner of the New York City Human Resources Administration, ABDUL BAMBA, TERESA DUARTE,

                Defendants.

24-cv-10071-MKV

**OPINION & ORDER**

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff, proceeding *pro se* and *in forma pauperis*, [ECF No. 5], sues the Human Resources Administration of New York City ("HRA"), the New York City Department of Social Services ("DSS"), Commissioner of HRA and DSS Molly Wasow Park ("Commissioner Park"), HRA Supervisor Abdul Bamba (s/h/a "Abdul Bambaa") ("Bamba"), and HRA Case-Worker Teresa Duarte ("Duarte") (the "Defendants"). Plaintiff initiated this action by filing an application for a preliminary injunction and temporary restraining order, [ECF No. 1], which Chief Judge Swain summarily denied for failing to include any "factual allegations at all." [ECF No. 4]. In that Order, the Court directed Plaintiff to file a Complaint, *id.*, which he did. [ECF No. 7] (the "Complaint"). When Defendants failed to respond, the Court issued an Order to Show Cause, [ECF No. 17], that prompted Defendants' participation in this case, [ECF No. 19], and also seems to have prompted a Request for a Clerk's Certificate of Default by Plaintiff, [ECF No. 24]. Defendants moved to dismiss the Complaint, [ECF No. 25] (the "MTD"), and Plaintiff, despite two warnings, [ECF Nos. 28, 29], declined to oppose.

1

## BACKGROUND

Plaintiff is a "diabetic homeless [v]eteran" and a "[c]lient" of HRA's HIV/AIDS Services Administration ("HASA"). Compl. ¶ 40. HASA "is a [New York City] service program for individuals diagnosed with HIV/AIDS." Compl. ¶ 8. "[S]ince 2019" Plaintiff has either "been eligible for" or actually "received" a slew of benefits under federal, state, and municipal law through HRA, including Supplemental Nutrition Assistance Program ("SNAP"), "Safety Net ('Cash Assistance'/'Public Assistance'/'PA'/'CA')", and Housing Opportunities for People with AIDS ("HOPWA") benefits. Compl. ¶¶ 10–13, 21–22, 50, 54. Recently, however, he was either "terminated from" or "denied initial . . . eligibility . . . for, at a minimum, **all** on-going benefits under the HASA Program, SNAP[,] and Cash Assistance Programs, respectively." Compl. ¶ 13 (emphasis original).

In October 2024, Plaintiff submitted "a Recertification form . . . in order to renew his benefits." Compl. ¶ 18. Over the course of a sequence of events that is not at all clearly laid out in the Complaint, it would appear that "Defendants refused to grant recertification, thereby effectively terminating [Plaintiff's] participation in the HASA program." Compl. ¶ 19. More specifically, through "behavior extend[ing] all the way up to the Commissioner's office[,] Defendants are simply refusing to certify [Plaintiff] for participation in . . . HASA . . . until and unless he complies . . . with their unlawful eligibility requirement(s)." Compl. ¶ 25. These requirements—which Plaintiff has been disputing "for what he claims, 'feels like years,' . . . since 2019[,]"—center on an "absurd" and "made up" policy that would require Plaintiff to provide "an address and/or a place for [a] 'Field Visit'" before he can access, or continue to access, as the case may be, HASA benefits and services. Compl. ¶ 21, 23. Put differently, Plaintiff has been "threatened with termination if he refuse[s] to get an address to make it possible for a Field Visit

2

to regain access to his benefits." Compl. ¶ 19. Insofar as "Defendants paid no attention to his protests on the phone or via e-mails and made no arrangements to hear [his] disputes[,]" Plaintiff "had no opportunity to dispute the adverse decision and change of his benefits[.]" Compl. ¶ 20.

In November 2024, Plaintiff gave "notice via email" of his "inten[t] to seek redress[,]" Compl. ¶ 30, and applied for SNAP benefits through the HRA website, Compl. ¶ 33. He was "given an interview based on his application and lack of income or savings" but a "Mr. Lin[,]" about whom no further information is given, said that, for unknown reasons, he would not " 'be able to open [Plaintiff's] account[.]' " Compl. ¶ 34. A month later, he was again "presented [with] an impermissible, unauthorized, non-existent, made-up rule" purporting to require that he facilitate a field visit in order " 'to get benefits to restart[.]' " Compl. ¶ 36. Under this rule, Bamba and Duarte—an HRA "Supervisor" and "Case[-]Worker[,]" respectively, Compl. ¶ 5—"refused to release the benefit(s) to [Plaintiff]." Compl. ¶ 35. He did not receive "prior notice of the termination and stopping of his benefits" and was "not inform[ed] . . . of his right to appeal or [to] a hearing." Compl. ¶ 39.

## STANDARD

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotations and citations omitted, emphasis original). But the "special

solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has its limits—to state a claim, pro se pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

### ANALYSIS

At the outset, the Court notes that Plaintiff has not availed himself of the multiple opportunities he has been offered to respond to Defendants' motion to dismiss his Complaint. *See* [ECF Nos. 28, 29]. However, the Court is not authorized to dismiss on this basis alone. *See Goldberg v. Danaher*, 599 F.3d 181 (2d Cir. 2010). The Complaint is, candidly, difficult to decipher, but the Court has endeavored to afford Plaintiff every solicitude. Accordingly, the Court will consider the "pure legal question," *id.* at 183, of whether Plaintiff's Complaint, "construed liberally and interpreted to raise the strongest [claims] that [it] *suggest[s]*," *Triestman*, 470 F.3d at 474 (emphasis original, quotation omitted), manages to state a claim.

## I.    Entity Defendants

As an initial matter, any claims against HRA and DSS, Compl. ¶ 4, are dismissed with prejudice.  Each of these is a non-suable entity.  *See Jean v. HRA*, No. 24 Civ. 5401 (LLS), 2025 WL 2051019, at *2 (S.D.N.Y. July 21, 2025) ("Plaintiff should not list these non-suable entities (CCRB, the HRA, and NYPD precincts) as defendants in the . . . amended complaint[.]"); *McWilliams v. Monroe*, No. 23 Civ. 3414 (LTS), 2023 WL 4351229, at *4 (S.D.N.Y. July 4, 2023) ("The Court therefore dismisses the county DSS and CPS defendants as nonsuable entities."). Should Plaintiff wish to pursue a theory of *Monell* liability in any amended complaint, *id.* at *5 (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 692 (1978)), he "should make the claims against New York City although done by its agencies." *Jean*, 2025 WL 2051019, at *2.

## II.    Due Process

Plaintiff's strongest claim sounds in due process.  *See* Compl. ¶¶  1 ("This is a civil action authorized by 42 U.S.C. Section 1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States."); Compl. ¶¶ 11, 13, 14, 27, 28, 31, 55 (invoking Plaintiff's "Fourteenth Amendment procedural due process rights").  "The two threshold questions in any Section 1983 claim for denial of procedural due process are whether the plaintiff possessed a liberty or property interest protected by the United States Constitution or federal statutes, and, if so, what process was due before plaintiff could be deprived of that interest." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).

The allegations in the Complaint do not offer plain statements from which the Court can discern answers to these basic questions.  To begin with, it is very difficult to tell for what benefits Plaintiff claims he was eligible—or, perhaps, already receiving—at the time of the alleged

deprivations. *See* Compl. ¶¶ 28 ("There are also several federal cases that have applied the due process right to deprivations of public housing assistance (Since HASA program has a rental assistance component, which has also been deprived as a result of the complained upon acts and behavior by Defendant HRA/NYC DSS)"); 50 ("Plaintiff argues that the defendant agency has not released his (on-going) benefits of Food Stamps ('SNAP') and Cash Assistance ('Saftety Net Assistance' / 'SNA') or ('CA') to him after eligibility had been clearly esatblished [sic] in the most recent application(s) (among others since 2019) for benefits on Novemeber 7, 2024."). As noted, Plaintiff alleges that a number of federal, state, and municipal benefits were withheld or revoked simultaneously through what seems to have been essentially one process.

Indeed, it is just as challenging to ascertain whether, when, or by what process those deprivations are alleged to have occurred at all. Plaintiff alleges that he was "threatened with termination," Compl. ¶ 19, that personnel was not able to "open[] his case," Compl. ¶ 34, and that he was told a field visit would be required "to get benefits to restart," Compl. ¶ 36, but also that he was actually "terminated from[,]" or "denied initial and ongoing eligibility" for those same benefits outright, Compl. ¶ 13. Likewise, Plaintiff alleges that he was given an "interview" in the midst of the saga he describes, Compl. ¶ 34—and he describes a saga replete with multiple indications over multiple months that whatever benefits he believed he was entitled to would either be unavailable in the first instance or else terminated—but also that he was never given notice of potential termination or an opportunity to be heard, Compl. ¶ 14.

To the extent that there was a process beyond the invocation of an "impermissible, unauthorized, non-existent, made-up" rule, Compl. ¶ 36, it is not clear what that process entailed. Indeed, Plaintiff elsewhere appears to acknowledge that the rule was not so much non-existent as purportedly misapplied to his case. Compl. ¶ 65 ("It has also been clearly established that D[uarte]

was not permitted to use an alternate contact or means of verification without prior arrangement with [Plaintiff.]"). Naturally, this makes it difficult for the Court to assess whether the process Plaintiff was afforded by state law and state actors was constitutionally sufficient.

Unfortunately, Defendants' motion to dismiss, which contains only five pages of legal argument, is itself almost equally unhelpful. The sole argument Defendants raise with respect to Plaintiff's due process claims is that "Plaintiff's alleged deprivation was 'based on random, unauthorized acts,' and, thus, due process requirements are satisfied 'so long as the state provides an adequate post-deprivation remedy.' " MTD at 5 (cleaned up, quoting *Hellenic American Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (*HANAC*)). Because New York law provides for adequate post-deprivation remedies, Defendant says, "Plaintiff cannot now assert a viable claim that he was denied procedural due process." MTD at 6 (citing N.Y. Soc. Serv. Law § 22, 18 N.Y.C.R.R. § 358, and N.Y.C.P.L.R. Art. 78).

This reads like a tidy basis for dismissal, except that it would require of the Court an impermissibly closed-minded reading of Plaintiff's Complaint and the applicable caselaw. To begin with, it is true that Plaintiff used in his Complaint words like "unauthorized" and "fraudulent," MTD at 5 (quoting Compl. ¶¶ 36, 38), but the "policy of liberally construing *pro se* submissions[,] *Triestman*, 470 F.3d at 475, would obviously not be well-served were the Court to treat certain words and phrases as trap-doors requiring dismissal upon cursory identification by a defendant.

More fundamentally, it seems that dismissal under *HANAC* requires at least some examination of the relevant statutory and regulatory provisions under which Defendants are alleged to have acted. *See Grune v. Hernandez*, No. 24-1803, 2025 WL 1416891, at *3 (2d Cir. May 16, 2025) (summary order) (holding that "[t]he district court properly treated [defendant's]

actions . . . as 'random and unauthorized[]' " where defendant "did not comply with" applicable requirements under "[t]he Town Code").  With respect to Plaintiff's claims premised upon his SNAP eligibility, at least, Plaintiff cites to 7 C.F.R. § 273.2(f), Compl. ¶ 65, part of the body of federal regulations that govern "the administration of the program [as] delegated to state agencies, who make the individual eligibility determinations[.]" *Vapne v. Eggleston*, No. 04 Civ. 565 (NRB), 2004 WL 2754673, at *1 (S.D.N.Y. Dec. 1, 2004).  7 C.F.R. § 273.2(f), which governs the circumstances under which "[h]ome visits may be used as verification[,]" *id.* at (4)(iii), appears to provide for the eligibility requirements contested here.

It is not clear from the Complaint or the Court's independent review of the cited regulatory provisions whether the alleged requirements of "an address, a field visit and or [sic] emergency housing . . . under the HASA program, SNAP and Cash Assistance Programs [sic]," Compl. ¶ 13, were indeed "random and arbitrary[,]" *HANAC* at 881, as applied to Plaintiff.  Instead, it seems plausibly the case that "the state delegated to [Defendants] the power and authority to effect the very deprivation complained of . . . and the concomitant duty to initiate the procedural safeguards set up by state law, even if the act in question was not . . . sanctioned by state law." *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006) (cleaned up, quotations omitted).  And this would require an analysis completely different from the only one suggested by Defendants, since "[w]here the government deprives a plaintiff of some property interest pursuant to an established procedure, procedural due process is generally satisfied so long as some form of hearing is provided before the individual is deprived of the property interest." *Beaman v. New York City*, No. 24 Civ. 2350 (LTS), 2024 WL 4635428, at *3 (S.D.N.Y. Oct. 28, 2024) (footnote omitted).

"[H]owever inartfully pleaded," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), there is nothing inherently implausible about Plaintiff's allegations that he was "den[ied] or [had] terminat[ed] . . . benefits . . . because of lack of an address or emergency housing without . . . notice and hearing."[1]  Compl. ¶ 14.  Certainly it does not " 'appear beyond doubt that the plaintiff can prove no set of facts in support of [his] claim which would entitle [him] to relief,' " so, particularly in view of the scant briefing submitted by Defendants, Plaintiff's due process claim " 'may not be dismissed' " at the pleadings stage.  *Cadet v. All. Nursing Staffing of New York, Inc.*, 632 F. Supp. 3d 202, 219 (S.D.N.Y. 2022) (cleaned up, quoting *Legeno v. Corcoran Grp.*, 308 F. App'x 495, 496 (2d Cir. 2009) (summary order) (quotation omitted)).

## III.    Other Claims

Plaintiff's Complaint also suggests a number of other claims.  *See* Compl. ¶¶ 51 (alleging that "HRA's method of implementing and administering its Program, is not consonant with the . . . Food Stamp Act."); 66–68 (noting that "the Right to Petition in Courts [sic] is a First Amendment Right" and that "Dfendants [sic] . . . violated [Plaintiff's] clearly established right to be free from retaliation for writing an email to B[amba] and or [sic] the Commissioner of HRA"); 31 (alleging Bamba "continued this misconduct in violation of [Plaintiff's] rights to Due Process and Equal Protection Under the Law secured by the United States Constitution or by Federal law and guaranteed by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States to deprive the plaintiff of property and due course of justice in violation of 42 U.S.C. sec. 1981, 42 U.S.C. sec. 1985 (3) and 42 U.S.C. sec. 1983"); 72 (asserting that Plaintiff "has a substantial likelihood of success of proving that the retaliatory cancelation of food stamp benefits

---

[1] While Plaintiff was "given an interview based on his application[,]" Compl. ¶ 34, the circumstances of that interview are far from clear, and, particularly without the benefit of briefing on the issue from Defendants, the Court declines to "resolve[] issues of fact" against Plaintiff, *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014), in order to hold that, whatever it was, the "interview" was sufficient as a matter of law to satisfy the requirements of the Due Process Clause.

violates the Equal Protection Clause of the Fourteenth Amendment" and reciting the text of that Amendment); 12 (Plaintiff "seeks damages ('Compensatory') as well as State Pendant Claims, including but **not** limiting [sic] to NIED and Emotional Distress").

Defendants have declined to address any of these claims except the one under 42 U.S.C. §§ 1981, and, in general, any claims that might have been brought against Commissioner Parks. The Court agrees with Defendants' argument as to 42 U.S.C. §§ 1981, while noting that it seems to run counter to their due process argument. *See* MTD at 7 ("Clearly, when requesting Plaintiff to provide an address and/or location for a field visit, the HASA employees were merely asking the Plaintiff to fulfil the statutory requirements that he and all others, regardless of race, are required to abide by." (citing 18 N.Y.C.R.R. § 351.1(b)(ii)(2)).[2]

With respect to this claim, as well as the other claims Defendants fail to address, the Court finds that conclusory references to governing statutes and causes of actions do not state claims upon which relief can be granted. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("[L]egal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Hence, though we are obligated to draw the most favorable inferences that [plaintiff's] complaint supports, we cannot invent factual allegations that he has not pled." (quotations and citations omitted)); *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) ("Although we afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, a liberal interpretation of a pro se civil rights complaint may not supply essential elements of the claim that were not initially pled." (quotation omitted)). The Court similarly finds the lone allegation that the "same behavior extends all the way up to the

---

[2] The Court notes in this connection that the regulatory scheme to which Defendants cite—with minimal elaboration—obviously does not make public assistance categorically contingent upon an applicant's **not** being homeless. *See, e.g.*, 18 N.Y.C.R.R. § 352.35 ("Eligibility for temporary housing assistance for homeless persons").

Commissioner's office" legally inadequate to support any claim against Commissioner Parks. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) ("[A] supervisory official cannot be held liable under § 1983 on a theory of respondeat superior.").

Accordingly, Plaintiff's claims—aside from the due process claim—must be dismissed. That being said, "a *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Romano v. Lisson*, 711 F. App'x 17, 19 (2d Cir. 2017) (summary order) (cleaned up, quotation omitted) (*sua sponte* dismissal of *pro se* complaint brought *in forma pauperis* was appropriate, but "[t]he district court erred . . . in dismissing . . . with prejudice"). The Court cannot find as a matter of law, particularly without any assistance from Defendants' briefing, that there is no indication in the Complaint that Plaintiff might be able to state a claim, in particular, under 7 U.S.C. § 2020(e)(5) (the "Food Stamp Act"). The other claims that Plaintiff has arguably raised appear to be even more of a stretch, and, candidly, the Court has reservations about the due process claim already discussed.

Nevertheless, Plaintiff is granted leave to amend. While the Court may not "dictat[e] the form" of any amended complaint Plaintiff may choose to file, *Shomo v. State of New York*, 374 F. App'x 180, 184 (2d Cir. 2010), the Court suggests that it would help "ensure that any meritorious claims are clear to the court," *id.*, if Plaintiff were to confine himself to a concise statement of facts and a clear indication of the sources of law under which he sues. *See Beaman v. Valentino*, No. 23 Civ. 4961 (LTS), 2023 WL 4472174, at *4 (S.D.N.Y. July 10, 2023) ("If Plaintiff chooses to file an amended complaint, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant in the 'Statement of Claim' section of the amended complaint form.").

## CONCLUSION

Plaintiff has thirty days from entry of this Order to submit an amended complaint. Thereafter, Defendants shall have three weeks to respond, by answer or by motion, and any subsequent briefing shall occur on the schedule contemplated by the Local Rules.

**Plaintiff, who has a history not only in this matter but also in other matters before other Judges in this District of failing to comply with court orders and to prosecute cases he initiates *in forma pauperis*, *see Beaman v. United States*, No. 20 Civ. 309 (VSB), 2021 WL 1632956, at \*2 (S.D.N.Y. Apr. 26, 2021), is on notice that continued failure to do so here may result in dismissal of his case.  *See* Fed. R. Civ. P. 41(b).**

Date:  **February 19, 2026**
        **New York, NY**

_____
        **MARY KAY VYSKOCIL**
        **United States District Judge**